Appeal No. 2022-1468

**UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

RIGGS TECHNOLOGY HOLDING LLC,
*Plaintiff-Appellant*,

v.

CENGAGE LEARNING, INC.
*Defendant-Appellee.*

Appeal from the United States District Court for the District of Massachusetts in Case No. 1: 21-cv-10778, Judge Leo T. Sorokin

**RESPONSE BRIEF
OF DEFENDANT-APPELLEE
CENGAGE LEARNING, INC.**

Ricardo J. Bonilla
Neil J. McNabnay
Rodeen Talebi
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
rbonilla@fr.com
mcnabnay@fr.com
talebi@fr.com

*Counsel for Defendant-Appellee*
Cengage Learning, Inc.

May 23, 2022

## Patent Claims at Issue
## Fed. Cir. R. 28(a)(12)

This appeal concerns claims 1-18 of U.S. Patent No. 7,299,067 ("the '067 Patent"). The district court treated independent Claim 1 of the '067 Patent as representative of all claims of the patent for patent-eligibility analysis under 35 U.S.C. § 101. Riggs agrees that Claim 1 is representative.

Claim 1 of the '067 Patent recites:

> 1. A method of managing training completed remotely at a hand held device, said method comprising the step of:
>
> receiving at a training server training data transmitted to the training server through a data network from a user of a hand held device, the training data representing training taken by the user at hand held device;
>
> receiving identifying information for the user of a hand held device concurrently with the training data file;
>
> identifying the user of the hand held device;
>
> authenticating the identify of the user of the hand held device by requesting authentication data from the user and comparing the authentication data with a master user identification template containing authentication data associated with the user and accessible by the training server to determine if said comparison authenticates the user's identify as an authorized trainee;
>
> recording the training data in memory associated with the training server;
>
> locating at least one training file contained within the training data;
>
> determining status of the training file by comparing the training file with an associated master training template accessible from memory by the training server, the status including a determination if training

represented by the training file meets a set criterion including at least one of: pending, incomplete, failed, passed; and

recording training status in memory.

## CERTIFICATE OF INTEREST

**(1) The full name of every entity represented in the case by the counsel filing the certificate.**

Cengage Learning, Inc.

**(2) For each entity, the name of every real party in interest, if that entity is not the real party in interest.**

- Cengage Learning Holdings II, Inc.

**(3) For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock. This satisfies the disclosure statement requirement of Federal Rule of Appellate Procedure 26.1(a).**

- KKR Asset Management
- KKR & Co. L.P.

**(4) The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this court.**

- Kayleigh E. McGlynn

**(5) Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.**

2022-1469 *Riggs Technology Holdings, LLC v. Vagaro, Inc.*

**(6) All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases.**

Not applicable

## TABLE OF CONTENTS


STATEMENT OF RELATED CASES ........................................................ 1

STATEMENT OF THE ISSUES ............................................................. 1

STATEMENT OF THE CASE ................................................................ 1

I. The Parties ........................................................................ 2

II. The '067 Patent ................................................................... 2

III. Procedural History ................................................................ 6

SUMMARY OF THE ARGUMENT ............................................................ 9

ARGUMENT ........................................................................... 10

I. Standard of Review ................................................................. 10

II. The Law of Subject Matter Eligibility ............................................. 10

III. The'067 Patent is Ineligible under 35 U.S.C. § 101. .............................. 12

A. Claim 1 of the '067 Patent is representative. ...................................... 12

B. *Alice* step one: Claim 1 is directed to an abstract idea. .......................... 14

1. Claim 1 is directed to the abstract idea of remotely managing training. ............. 14

2. Claim 1 claims the abstract idea functionally. ..................................... 19

3. Claim 1 does not improve computer functionality. .................................. 21

C. *Alice* step two: the claims do not have an inventive concept. ..................... 28

D. Nothing precluded the district court from assessing eligibility of the patent at the Rule 12(b)(6) stage. ... 37

IV. Conclusion and Relief Sought ..................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018)........................................................ 10, 38

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016)............................................................36

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014)..................................................................*passim*

*Ancora Techs., Inc. v. HTC America, Inc.*,
908 F.3d 1343 (Fed. Cir. 2018)............................................................24

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
788 F.3d 1371 (Fed. Cir. 2015)............................................................36

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
915 F.3d 743 (Fed. Cir. 2019) ..............................................10, 13, 28, 36

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012) ........................................................... 25

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)..................................................10, 37, 38

*Bilski v. Kappos*,
561 U.S. 593 (2010) ..........................................................................11, 13

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ...........................................................33

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) ....................................................... 27, 30

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)...............................................................19

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014) ....................................................... 30, 37

*Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018)....................................................................20

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020) ...................................................................28

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018) .....................................................................20

*Diamond v. Chakrabarty*,
447 U.S. 303 (1980)...................................................................................... 11

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)...................................................... 21, 27, 32

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) .....................................................................21

*FairWarning IP, LLC v. Iatric Sys.*,
839 F.3d 1089 (Fed. Cir. 2016)................................................................... 36

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018).................................................................... 25

*Free Stream Media Corp. v. Alphonso Inc.*,
996 F.3d 1355 (Fed. Cir. 2021) .....................................................................19

*Genetic Techs. Ltd. v. Merial L.L.C.*,
818 F.3d 1369 (Fed. Cir. 2016) ................................................................... 37

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ........................................................................................ 11

*Gust, Inc. v. Alphacap Ventures, LLC*,
905 F.3d 1321 (Fed. Cir. 2018) .....................................................................16

*Idexx Labs., Inc. v. Charles River Labs., Inc.*,
CV 15-668-RGA, 2016 WL 3647971 (D. Del. July 7, 2016)..................... 18

*Intellectual Ventures I LLC v. Cap. One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ................................................................... 22

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*
850 F.3d 1332, 1342 (Fed. Cir. 2017)........................................................ 35

*Intellectual Ventures I LLC v. Symantec Corp*
838 F.3d 1307, 1316 (Fed. Cir. 2016) .......... 29, 30

*Le Roy v. Tatham*,
55 U.S. 156 (1852) .......... 11

*In re Loestrin 24 Fe Antitrust Litig.*,
814 F.3d 538 (1st Cir. 2016) .......... 10

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015) .......... 37

*Messaging Gateway Sols., LLC v. Amdocs, Inc.*
No. CV 14-732-RGA, 2015 WL 1744343, at *5 (D. Del. Apr. 15, 2015) ... 33

*NetSoc v. Match Grp., LLC*
838 Fed. Appx. 544, 550 (Fed. Cir. 2020) .......... 23

*Parker v. Flook*,
437 U.S. 584 .......... 27

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) .......... 37

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017) .......... 20

*Riggs Tech. Holdings, LLC v. Vagaro, Inc.*,
Case No. 3:21-cv-07927-TSH (N.D. Cal.) .......... 2, 8, 9, 16

*SAP America, Inc. v. InvestPic, LLC*
898 F.3d 1161, 1167 (Fed. Cir. 2018) .......... 19, 20, 25

*Simio, LLC v. Flexsim Software Prods.*,
983 F.3d 1353 (Fed. Cir. 2020) .......... 37, 40

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016) .......... 19, 29

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) .......... 19, 20

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021), cert. denied, 142 S. Ct. 1113, 212 L. Ed. 2d 10 (2022) .......... 32

**Statutes**

35 U.S.C. § 101 .......... *passim*

**Other Authorities**

FED. R. CIV. P. 12 .......... 37, 38, 39

FED. R. CIV. P. 47.5 .......... 1

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Cengage affirms that the Statement of Related Cases and the Statement of Jurisdiction in Riggs's brief are correct.

## STATEMENT OF THE ISSUES

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The district court found that the claims of the asserted patent are directed to the abstract idea of providing, managing, and/or documenting training completed remotely on a handheld device and do not include an inventive concept beyond that idea. Did the lower court therefore properly determine that the claims of the asserted patent do not claim eligible subject matter under 35 U.S.C. § 101?

## PRELIMINARY STATEMENT

Providing, managing, or documenting training completed remotely on a handheld device is an abstract idea ineligible for patenting. The application of this idea using a framework of generic handheld devices and servers adds nothing to raise it above the realm of the abstract.

Appellant's brief raises no difficult questions regarding subject matter eligibility. Its argument on appeal reduces to its contention that, prior to the purported conception of the asserted claims, training could not be "received,

claimed, and credited to a particular user at anytime and anywhere." *See* Blue Br. at 4. That is, Appellant argues that because its claims allow for remote management of training "anytime and anywhere," the claims should be eligible. Not so. Even if Appellant were the first to come up with the idea that training could be managed remotely (it was not), that idea is still abstract, and it is therefore not proper subject matter for patenting. Further, the claims' recitation of well-known devices (*i.e.*, handheld devices and servers) performing conventional functions (*i.e.*, receiving, comparing, and storing data) to practice this abstract idea does not result in patent-eligible claims. Accordingly, the claims do not cover patent-eligible subject matter, and Cengage respectfully requests affirmance of the ruling below.

## STATEMENT OF THE CASE

### I. The Parties

Riggs Technology Holdings, LLC is a non-practicing entity and the purported assignee of the '067 Patent. It has asserted the '067 Patent in eighteen cases since 2018. Riggs is currently appealing the orders of two different district court decisions before this Court. *See Riggs Tech. Holdings, LLC v. Vagaro, Inc.*, Case No. 3:21-cv-07927-TSH (N.D. Cal.).

### II. The '067 Patent

The '067 Patent "is generally related to methods and systems for electronically providing education, instruction and/or training to remote

end-users." Appx0049, '067 Patent at 1:19-21. Specifically, the patent is related to "remotely providing training, remotely completing training, registering users, authenticating users, managing remote training, and certifying completion of remote training." Appx0049, '067 Patent at 1:28-30.

The applicant explained that for years companies would send their employees to training programs conducted by an in-house training department or an outside firm. Appx0049, '067 Patent at 1:49-59. But as the patent explains, "such programs typically require that an employee attend a number of training sessions at a selected training site." Appx0049, '067 Patent at 1:60-63. And, "[a]s a result, the employee may have to travel between the training site and the workplace and may possibly have to stay overnight near the training site." Appx0049, '067 Patent at 2:1-4. The applicant also admitted that at the time of the patent, to provide "a more efficient means to undergo training[,] . . . Continuing Legal Education ('CLE') had found its way to the Internet with well-known service providers such as LawyersLearn.com, Inc. [which] deliver[ed] online continuing legal education to attorneys . . . ." Appx0049, '067 Patent at 2:15-22. The patent then explains:

> The present inventor has recognized the convenience that online training and education is bringing to busy workers and professional since the advent of the Internet. The present inventor, however, has also recognized that vast

> **improvements in wireless technology can further enhance current offerings in online education and current training applications that are primarily focused on a "connected" or "wired" world**, but physically connected systems and training application will also continue to experience an explosion of growth and improvement as more people begin to fully realize to positive impact that data networks have on everyday life.

Appx0050, '067 Patent at 3:59-4:3 (emphasis added). In other words, the applicant wanted to use the **existing** "wireless technology" to enhance the **existing** training offered in "connected" or "wired" environments. Thus, as the applicant explained, the goal of the alleged invention was to provide "an interactive process that enables wireless education, instruction and/or professional development via portable, wireless handheld computer systems." Appx0050, '067 Patent at 4:4-7.

But the purported solution the applicant provided for providing an interactive process that enables wireless education, instruction and/or professional development consists of nothing more than the conventional use of generic devices and technologies. The applicant made this clear through his own language in the specification. For example, the specification makes the following concessions about the use of conventional devices and technologies:

> **Computers have also allowed for the dissemination of information either to limited groups or to large audiences via such communication channels as local area networks**

> **(LANs), wide area networks (WANs), and the Internet**. Within this transmission of information, multimedia presentations have expanded to broaden the information dissemination and training opportunities available over LANs, WANs, and the Internet.

Appx0050, '067 Patent at 3:12-19 (emphasis added).

> **PDA's and similar hand held devices can also be linked remotely to networks such as the Internet** via local wireless resources, such as RF broadcasts or through available wireless communications techniques.

Appx0050, '067 Patent at 3:44-47 (emphasis added).

> The most advanced data- and video-enabled wireless communication devices **currently available in the marketplace take the form of a PDA** (e.g., Palm Pilot™, Handspring Visor™, and Windows CE compatible hand held computers, such as the iPAQ™).

Appx0050, '067 Patent at 3:48-52 (emphasis added).

> **Hand held device [] can also be configured with features of combination cellular telephone/PDA devices**. One recent example of such a device is the Handspring™ PDA and associated cellular phone attachment module, which is manufactured and sold by Handspring™ Inc. Other such devices include the Palm-Motorola phone, which permits users to access e-mail and store calendars and contact databases.

Appx0053, '067 Patent at 10:11-18 (emphasis added).

> A user can utilize a web browser, such as Netscape Navigator™, Microsoft Internet Explorer™, **or other web browsers and micro browsers known to those skilled in the art, to access training and associated information**.

Appx0056, '067 Patent at 16:8-11 (emphasis added).

> A login procedure is generally provided for the user where the user is asked to enter a password, login handle, biometric sample, or any

> combination of verification/authentication data. **GUI representations of login screens and password fields are well known in the art**.

Appx0056, '067 Patent at 16:50-54 (emphasis added).

Accordingly, the alleged invention requires only use of generic devices and technologies used for their conventional purposes.

## III. Procedural History

On May 12, 2021, Riggs Technology Holdings, LLC sued Cengage Learning, Inc. in the District of Massachusetts, alleging infringement of one or more of claims of the '067 Patent. Appx0065. On August 19, 2021, Cengage filed its motion to dismiss for failure to state a claim because the asserted claims recite ineligible subject matter under 35 U.S.C. § 101. Appx0088. Riggs filed its response on October 4, 2021 and Cengage filed its reply on October 18, 2021. Appx0116, Appx0132.

On January 21, 2021, the district court granted Cengage's motion to dismiss and entered final judgment in favor of Cengage. Appx0001-9. The district court applied the two-step framework of *Alice* to determine that all claims of the '067 Patent are ineligible under 35 U.S.C. § 101. Appx0001-9.

At *Alice* step one, the district court determined that "the '067 patent is plainly drawn to an abstract idea." Appx0007. The court reasoned that "the concept underlying the claims of the '067 patent—providing, managing,

and/or documenting training completed remotely on a handheld device—is akin to those found in claims the Federal Circuit has deemed abstract and ineligible." Appx0007 (citing *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 610-611 (Fed. Cir. 2016); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014)). The court found that "the '067 patent and its claimed 'advance' describe an existing process (providing and managing training) and propose using existing technology (devices which access networks and servers remotely and wirelessly) to achieve the abstract end-result at the heart of the patent (providing wireless, remote access to training programs)." Appx0007-8.

At *Alice* step two, the district court determined that "[t]he '067 patent claims contain no inventive concept that can transform the abstract idea to which they are drawn into patent-eligible subject matter." Appx0008. The court reasoned that "the claimed components and features (e.g., 'training data,' server,' 'data network,' identifying information,' 'hand held device,' and 'authentication data')—none of which Riggs claims to have invented—are all generically defined and conventional." Appx0008 (citing *Affinity Labs*, 838 F.3d 1263; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016)). The court further reasoned:

> At bottom, the ’067 patent discloses the concept or idea that a process (training) already performed as a human activity (at in-person and satellite-broadcast events) and via wired computers (online at desktop terminals) **could also be performed**, in more times and at more places, **using wireless technology and handheld devices (which already existed and were in use for other purposes)**, without proposing or claiming any improvement to such technology or devices to accomplish the stated (abstract) result.

Appx0008-9 (citing *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021), cert. denied, 142 S. Ct. 1113, 212 L. Ed. 2d 10 (2022) (emphasis added)). The district court thus found that “[s]uch a claim is not eligible for a patent.” Appx0009. This appeal followed.

The district court was not alone in making this determination, as another district court in California reached the same conclusions regarding these patent claims. *See Vagaro*, Case No. 3:21-cv-07927-TSH, Dkt. No. 19, (N.D. Cal. Jan. 7, 2022). At *Alice* step one, the *Vagaro* court found that “[representative] claim 1 [of the ’067 Patent] is directed to the abstract idea of managing remote training.” *Id.* at 2. The court explained that the claim “can be accurately paraphrased as: Use computers to track the training someone took, make sure it’s the right person, and keep a record of the training status.” *Id.* at 3. The court further found that “the use of a popular device (a handheld computer device) for its intended purpose (use it remotely) does not save this patent from abstraction.” *Id.* at 4.

At *Alice* step two, the *Vagaro* court found that the claims do not have an inventive concept sufficient to transform the abstract idea into a patent-eligible application. *Id.* The court reasoned that managing remote training using generic and ubiquitous computer equipment did not shelter the patent from ineligibility:

> Claim 1 – in fact, every claim in the patent – merely requires "generic computer implementation" . . . or at least equipment that is very close to generic. The implementation requires a handheld device capable of receiving and transmitting data through a network to and from a server, a server that stores and can provide records, and authentication capability. **There is nothing inventive about applying the abstract idea of managing remote training to widely used and available computer equipment.**

*Id.* (emphasis added). The *Vagaro* court's reasoning, like the lower court here, was correct, and it supports affirmance of the judgment against Riggs.

## SUMMARY OF THE ARGUMENT

The claims of the '067 Patent are directed to the abstract idea of remotely managing training. This idea includes, as the district court recited, "providing, managing, and/or documenting training completed remotely on a handheld device." Appx0007. The claims take that abstract idea and simply apply it using generic technologies used for their conventional purposes. The claims do not contain "something significantly more" than the abstract idea or apply this idea in an inventive or unconventional way. The claims solve no

technical problem and achieve no technological improvement. Under long-standing Supreme Court and Federal Circuit jurisprudence, the claims are not patent-eligible. The district court was therefore correct to grant Cengage's motion, and its decision should be affirmed on this appeal.

## ARGUMENT

### I. Standard of Review

The Federal Circuit applies regional circuit law when reviewing a district court's dismissal of a complaint for failure to state a claim. *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019). The First Circuit reviews such dismissals *de novo*, accepting as true all well-pleaded facts alleged in the complaint and drawing all reasonable inferences in favor of the non-moving party. *In re Loestrin 24 Fe Antitrust Litig.*, 814 F.3d 538, 549 (1st Cir. 2016). Patent eligibility under § 101 is a question of law that may contain underlying issues of fact. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). The Federal Circuit reviews *de novo* a determination that a claim is directed to patent-ineligible subject matter. *Berkheimer*, 881 F.3d at 1365.

### II. The Law of Subject Matter Eligibility

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or

composition of matter." 35 U.S.C. § 101. In addition, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). Abstract ideas are not eligible for patent protection because they are a basic tool of human innovation and a monopoly over such ideas would preempt their use in all fields of endeavor. *See Bilski v. Kappos*, 561 U.S. 593, 612 (2010). The "abstract ideas" category embodies "the longstanding rule that '[a]n idea of itself is not patentable.'" *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (quoting *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507 (1874)); *see also Le Roy v. Tatham*, 55 U.S. 156, 175 (1852) ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right.").

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps: First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claims contain such an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more

than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). Thus, transformation of an abstract idea into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo*, 566 U.S. at 72).

## III. The '067 Patent is Ineligible under 35 U.S.C. § 101.

The claims of the '067 Patent are invalid under § 101. First, the claims are directed to an abstract idea—remotely managing training—and abstract ideas are not eligible for patent protection. Second, the claims are broadly generic and do not contain meaningful limitations that restrict the claims to non-routine and specific applications of the abstract idea. They amount to nothing more than the applicant's idea that it would be more convenient if people could participate in training remotely and do so using generic computer components for their conventional uses.

### A. Claim 1 of the '067 Patent is representative.

Claim 1 of the '067 Patent is representative of the other claims because the claims contain the same essential elements and are all directed to the same abstract idea of remotely managing training. Riggs agrees on this appeal, as it did below, that Claim 1 is representative for purposes of the ineligibility analysis. *See* Blue Br. at 4; Appx0004 ("The complaint focuses its allegations on claim 1, which the parties agree is representative for present purposes.").

All the independent claims (Claims 1, 7, and 13) recite methods/systems that perform the same essential elements: receiving data representing training taken by the user at a mobile device; receiving identifying information for the user; identifying the user; authenticating the user; recording the training data; locating a training file contained within the training data; determining if the status of the training file is pending, incomplete, failed, or passed; and recording the training status. The differences in phrasing between the claims are immaterial to the § 101 analysis because all of the claims are directed to the same abstract concept.

The patent's dependent claims add additional limitations regarding the abstract idea, but these are token pre- or post-solution activity that cannot confer an inventive concept. *Mayo*, 132 S. Ct. at 1297-98, 130001; *Bilski*, 561 U.S. at 610. The table below lists the additional limitations in the dependent claims:

| **Claim numbers** | **Limitations** |
|---|---|
| 2, 8, and 14 | authentication data including at least one of: a username, at least one password, at least one biometric template |
| 3, 9, and 15 | comparing the biometric template with a master biometric template associated with the user |
| 4, 10, and 16 | providing training status to at least one of: the user, or at least one third party associated with the user |
| 5, 11, and 17 | providing notice to at least one of: the user, or a third party associated with the user |

| | |
|---|---|
| 6, 12, and 18 | the notice is provided in the form of at least one of: electronic mail automatically generated by the training server; a printable letter automatically generated by training server, a printable certificate automatically generated by the training server; a facsimile automatically generated by the training server |

The differences between these claims and the independent claims are immaterial to the § 101 analysis because each is drawn to the same abstract idea, and each includes elements performed by computing components that are "purely conventional," merely requiring "a generic computer to perform generic computer functions." *Alice*, 573 U.S. at 225. Claim 1 of the '067 Patent is thus representative of the other claims in the patent.

### B. *Alice* Step One: Claim 1 is directed to an abstract idea.

#### 1. <u>Claim 1 is directed to the abstract idea of remotely managing training.</u>

The first step of the *Alice* analysis requires determining whether the claims at issue are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Here, the district court correctly found that the claims of the asserted patent are "plainly drawn to an abstract idea." Appx0007. Representative Claim 1 of the 067 Patent itself makes plain that the aim of the purported invention is applying ubiquitous wireless technology to monitor a user's training, including authenticating the user and recording the status of the user's training sessions:

| **Claim Language** | **Claimed Idea** |
|---|---|
| 1. A method of managing training completed remotely at a hand held device, said method comprising the step of: | |
| receiving at a training server training data transmitted to the training server through a data network from a user of a hand held device, the training data representing training taken by the user at hand held device; | Receiving data related to training taken by a user |
| receiving identifying information for the user of a hand held device concurrently with the training data file; | Receiving data identifying the user |
| identifying the user of the hand held device; | Identifying the user |
| authenticating the identity of the user of the hand held device by requesting authentication data from the user and comparing the authentication data with a master user identification template containing authentication data associated with the user and accessible by the training server to determine if said comparison authenticates the user's identify as an authorized trainee; | Authenticating the user |
| recording the training data in memory associated with the training server; | Storing the training data |
| locating at least one training file contained within the training data; | Recognizing the user's training |
| determining status of the training file by comparing the training file with an associated master training template accessible from memory by the training server, the status including a determination if training represented by the training file meets a set criterion including at least one of: pending, incomplete, failed, passed; and | Determining the status of the user's training |
| recording training status in memory. | Storing the status |

The *Vagaro* court accurately summarized these elements as "Use computers to track the training someone took, make sure it's the right person, and keep a record of the training status." *Vagaro*, Case No. 3:21-cv-07927-TSH, Dkt. No. 19, at 3.

The claim's advance is the bare idea of remotely managing a user's training by performing various high level functions. As the district court stated, "the concept underlying the claims of the '067 patent [is] providing, managing, and/or documenting training completed remotely on a handheld device." Appx0007. That is an abstract idea ineligible for patenting. *See, e.g.*, *Gust, Inc. v. Alphacap Ventures, LLC*, 905 F.3d 1321, 1336 (Fed. Cir. 2018) ("We have repeatedly observed that claims similar to those here directed to data organization and use of customizable profiles to facilitate patronage, even when applied in a new business practice like crowdfunding, are abstract ideas.").

Riggs argues that the district court incorrectly summarized the focus of the claims as "providing wireless, remote access to training programs." Blue Br. at 10. And Riggs itself provides multiple versions of what it believes to be the focus of the claims: "allowing a user to access and complete training at anytime and anywhere via a handheld device," *id.* at 6, or "receiving at a training server training data transmitted to the training server through a data

network from a user of a handheld device," *id.* at 11. Notwithstanding the differences between Riggs's two versions of the claims' focus, Riggs does not explain how its versions are different from what was found by the district court (*i.e.*, providing wireless, remote access to training programs) with respect to the § 101 analysis.

Indeed, Riggs's own characterization of the claim underscores its abstractness. Riggs does not argue that the claims involve any improvement to any computer component or system. Rather, Riggs notes that the ability to manage training remotely "allows a person to train at their pace when and where they prefer, an especially important aspect in today's post-Covid world." Blue Br. at 6. The benefit Riggs focuses on is not an improvement to technology but rather the use of generic technology to purportedly improve how training is conducted. Taking the idea of training and claiming the use of computers to "do it remotely" is precisely the type of ineligible claim contemplated by *Alice* and its progeny.

Riggs further argues that the district court improperly overgeneralized the invention claimed in the '067 Patent. Blue Br. at 10-11. Although the district court's characterization of the focus of the claim is broad, this comes not from an overgeneralization on the part of the court, as Riggs contends, but from the very breadth of the claim itself, as "the 'level of abstraction'

employed . . . in describing the claims must be consonant with the level of abstraction expressed in the claims themselves." *Idexx Labs., Inc. v. Charles River Labs., Inc.*, CV 15-668-RGA, 2016 WL 3647971, at *4 (D. Del. July 7, 2016) (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)). The district court's description of the focus of the claims is not "untethered from the language of the claims," Blue Br. at 10, but is drawn at an appropriate level of abstraction derived from the claims themselves. The idea to which the claims are directed is broad, but that is the quintessential characteristic of abstract ideas and highlights the "preemption concern that undergirds [] § 101 jurisprudence." *Alice*, 134 S. Ct. at 2358. The Supreme Court did not find it necessary to "delimit the precise contours of the 'abstract ideas' category." *Id.* at 2357. This Court need not either, as it is sufficient to identify the abstract idea to which the claims are directed, and that idea by its very nature is broad.

Riggs further argues that "[t]he District Court's over-generalized summary creates error by allowing the determination that the claims are not directed towards the creation of something physical." Blue Br. at 11. But claim elements that are directed to "something physical," *i.e.*, tangible devices (including hardware components), do not make a patent claim patent eligible under the § 101 analysis. *See Alice*, 573 U.S. at 210 (warning

"against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art"). This Court has applied *Alice* to invalidate claims involving physical components on several occasions. *See, e.g.*, *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019); *In re TLI Commc'ns*, 823 F.3d at 607.

2. Claim 1 recites the abstract idea functionally.

Claims that recite "functional results" but do not "sufficiently describe how to achieve these results in a non-abstract way" also fail *Alice* step one. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). Here, Claim 1 of the '067 Patent recites only the desired functions for receiving the user's training and identification information, noting the user's training status, and then storing that status. Claims like these that "do not describe how [the] result is achieved" are abstract. *See Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1363-64 (Fed. Cir. 2021).

In determining whether a particular claim is directed to an abstract idea, this Court focuses on whether the claim is purely functional in nature rather than containing the specificity necessary to recite how the claimed function is achieved. For example, in *SAP America, Inc. v. InvestPic, LLC*, this Court asked whether the claim had "the specificity required to transform

[it] from one claiming only a result to one claiming a way of achieving it." 898 F.3d 1161, 1167 (Fed. Cir. 2018). To answer that question, the Court "look[s] to whether the claims focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media*, 874 F.3d at 1337. The key question is "whether the claims are directed to 'a specific means or method' for improving technology or whether they are simply directed to an abstract end-result." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017).

Here, Claim 1 is directed to an abstract end-result. It lacks any of the specificity that this Court has held is sufficient to confer patent eligibility. *Cf. Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018) (holding eligible claims with the required specificity, but ineligible those without it); *Core Wireless Licensing S.A.R.L. v. LG Elec., Inc.*, 880 F.3d 1356, 1361-63 (Fed. Cir. 2018) (holding claims eligible where they were "directed to a specific improvement in the capabilities of computing devices"); *see also RecogniCorp*, 855 F.3d at 1326 (claims were ineligible because they were not directed to "a specific means or method for improving technology"). Claim 1 does not require a new or unconventional machine or process for remotely managing training—it requires only a generic mobile

device and a generic server to perform their conventional functions. "Inquiry therefore must turn to any requirements for *how* the desired result is achieved." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016). Claim 1 does not describe how the desired result is achieved. It merely recites broad computer functions such as receiving, comparing, and storing data. It does not detail how to implement any of these broad functions. The mechanism to implement the idea is impermissibly unbounded in scope. Consequently, the claim's functional nature further supports its ineligibility.

3. Claim 1 does not improve computer functionality.

This Court has also asked at *Alice* step one "whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Enfish*, 822 F.3d at 1335. Here, the claims use only known, generic components operating in a conventional manner without any attempt at a technological improvement.

Claim 1 of the '067 Patent is not directed to any specific means or method for improving technology—it is directed to the abstract idea of remotely managing training. For decades, in-person training was managed by identifying attendees, tracking attendance, and recording the status of attendees' training. For example, in the context of Continuing Legal

Education (CLE), when a person attends a particular in-person CLE session, she is required to present identification information and sign in on an attendance sheet, and the status of her training session is recorded by the training staff. Claim 1 is directed to the same concept, but claims to do so remotely via a handheld wireless device. Claim 1 is therefore directed to an abstract idea as it takes an existing human activity and attempts to implement it via generic technologies. *See, e.g.*, *Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (finding the claim at issue "not meaningfully different from the ideas found to be abstract in other cases before the Supreme Court and our court involving methods of organizing human activity").

Riggs contends that "the claim recites an underlying computing technology (handheld device) and an improvement to the underlying technology (remote access via a handheld device)." Blue Br. at 18. But contrary to Riggs's unsupported contentions, the purported invention claimed in the '067 Patent does not improve the technology in the handheld devices; instead, it uses existing handheld devices to implement the concept of providing and managing training. As stated by Riggs itself, "[t]he claims of the '067 patent are focused on an application that allows a user to access

training via a wireless handheld device." Blue Br. at 18. This does not constitute an improvement to the handheld technology.

Claim 1 is thus similar to the claims in *NetSoc v. Match Grp., LLC* where this Court held ineligible claims that were "directed to automating the longstanding practice of establishing a social network to allow humans to exchange information and form relationships." 838 Fed. Appx. 544, 550 (Fed. Cir. 2020). The Court explained that "[t]he claim limitations of 'maintaining' a list of participants, 'presenting' a user with selectable categories, 'receiving' the user's category selection, 'receiving' an inquiry from the user, 'selecting' a participant to receive the user's inquiry, 'sending' the inquiry to the participant, 'receiving' a response to the inquiry from the participant, 'publishing' the response, and 'tracking' feedback of the participants . . . are directed to automating a longstanding, well-known method of organizing human activity." *Id.* The Court further noted that the "claims are quintessential apply it with a computer claims." *Id.* (quotation omitted). Same here. Claim 1 of the '067 Patent recites only the desired functions, and therefore, it is not meaningfully different from the claims invalidated in *NetSoc*.

Claim 1 thus differs from the claims that this Court has held to be eligible because they claimed specific means for improving specific computer

technology or solving specific computer problems. For example, this Court addressed the eligibility of claims directed to improving computer security in *Ancora Techs., Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018). There, the Court held the claims eligible and stated, "[i]mproving security—here, against a computer's unauthorized use of a program—can be a non-abstract computer-functionality improvement . . . done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Id.* at *4 (emphasis added). The Court was persuaded because "[t]he claimed method here specifically identifies how that functionality improvement is effectuated in an assertedly unexpected way." *Id.* The same is not true of Claim 1 of the '067 Patent. It does not require a specific and unconventional technique, and it does not identify any specific improvement to computer functionality, much less an unexpected way of effectuating such an improvement.

Riggs also argues that "[e]mbodiments of the claimed invention provide numerous benefits over the prior art." Blue Br. at 3. Putting aside that the focus of the § 101 inquiry is the claims and not embodiments of the claims, the benefits recited by Riggs are just the benefits of practicing the abstract idea, not a technological improvement to technology. Nothing in the patent's claims allows a computer to do something it could not do before. *Cf.*

*Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1308 (Fed. Cir. 2018) (holding eligible claims construed to require "a new kind of file that enables a computer security system to do things it could not do before").

Riggs contends that the purported invention provides the benefits of "receiving training at any location using only a handheld device, and receiving credit for the training taken remotely," Blue Br. at 3, and allows "training [to] be received, claimed, and credited to a particular user at anytime and anywhere," *id.* at 4. None of these constitutes an improvement to technology; rather, these are benefits of practicing the abstract idea claimed in the patent. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (performing a task more efficiently does not materially alter patent eligibility).

Further, Riggs's contention that "[t]he '067 patent's specification teaches the claimed solution for remote training access [that] was not available prior to the invention," Blue Br. at 11, is not relevant here. Even if Riggs's argument regarding the novelty of the purported solution were true (it is not), novelty is not the test for patent eligibility under 35 U.S.C. § 101. This Court "may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility." *SAP America*, 898 F.3d at 1163.

Riggs makes two patently false statements regarding the conventionality of technologies at the time of the invention. In particular, Riggs states that "[t]ransmitting data via a handheld device was virtually unknown in 2001" and that "[h]andheld, wireless transfer of data, was not commonplace or conventional in 2001." Blue Br. at 12. To the contrary, these activities were conventional, and their wide availability and use was noted in the '067 Patent's own specification:

> **Later developments have given the PDA wireless capabilities.** Wireless capabilities allow PDAs to remotely interact with other PDA's/computers that are not physically connected to the PDA.
>
> Although PDA's may be connected to a desktop personal computer or other PDA's via infrared, direct wire, or wireless communication links, PDA's and similar hand held devices can also be **linked remotely to networks such as the Internet via local wireless resources, such as RF broadcasts or through available wireless communications techniques**.
>
> The most advanced **data- and video-enabled wireless communication devices currently available in the marketplace** take the form of a PDA (e.g., Palm Pilot™, Handspring Visor™, and Windows CE compatible hand held computers, such as the iPAQ™).

Appx0050, '067 Patent at 3:38-52 (emphasis added). The '067 Patent's specification further admits that the purported invention uses existing hand held devices and their wireless capabilities: "The present inventor, however, has also recognized **that vast improvements in wireless technology can further enhance current offerings** in online education and current

training applications that are primarily focused on a 'connected' or 'wired' world . . . ." Appx0050, '067 Patent at 3:61-66 (emphasis added). The patent's inventor relied on advancements made to generic technology (and that he did not invent) to supply the efficiencies for practicing this abstract idea remotely. That type of reliance, however, is not eligible for patenting under *Alice*.

Finally, as the district court correctly found, "[l]imiting the abstract idea at issue to one context—training administered and completed via handheld, wireless devices—does not change the step-one analysis of the focus of the patent's claims, as it does not suffice to establish an improvement over existing systems or a novel solution to a technological problem." Appx0008; *see also Elec. Power Grp.*, 830 F.3d at 1354 ("Most obviously, limiting the claims to [a] particular technological environment . . . is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core."). As the Supreme Court explained in *Alice*, *Parker* reinforces the proposition that the prohibition on patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment. *Alice*, 134 S. Ct. at 2358; *Parker v. Flook*, 437 U.S. 584; *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (claims' "narrowing to cover only online transactions

was an attempt to limit the use of the abstract guarantee idea to a particular technological environment, which has long been held insufficient to save a claim in this context") (internal quotations and citations omitted). Claim 1 is directed to an abstract idea of managing the training provided to a user, even if its limitations require practicing that idea in connection with a handheld mobile device.

Because the claims recite the abstract idea of remotely managing training, using known components operating in a conventional manner without any attempt at a technological improvement, the claims fail *Alice* step one.

### C. *Alice* Step Two: The claims do not contain an inventive concept.

At the second step of the *Alice* analysis, the Court "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 537 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72-73, 79-80). The inventive concept must go beyond "well-understood, routine, [and] conventional activity," *Mayo*, 566 U.S. at 79-80, and it is well established that "the invocation of 'already-available computers that are not themselves plausibly asserted to be an advance . . . amounts to a recitation of what is well-understood, routine, and conventional," *Customedia Techs., LLC v.*

*Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020) (citation omitted). Here, the claims are broadly generic and do not contain meaningful limitations that would restrict them to a non-routine, specific application of the abstract idea. Further, there is nothing inventive in the way these conventional components are arranged.

The claims of the ’067 Patent fail *Alice*’s second step because they are implemented on generic computer technology and therefore do not contain an inventive concept sufficient to confer eligibility. There is simply nothing “inventive” about using well-known devices (*i.e.*, a server and PDAs) to perform their conventional functions (*i.e.*, receiving, comparing, and storing data). As explained above, the abstract functional descriptions in the claims of the ’067 Patent are devoid of any technical explanation as to how to implement the purported invention in an inventive way. *See In re TLI Commc’ns*, 823 F.3d at 615 (claims failed *Alice*’s step 2 where specification limited its discussion of “additional functionality” of conventional components “to abstract functional descriptions devoid of technical explanation as to how to implement the invention”). Similar to the invalidated claims in *Intellectual Ventures I LLC v. Symantec Corp.*, nothing in the asserted claims “contains an ‘inventive concept’ sufficient to

'transform' the claimed abstract idea into a patent-eligible application." 838 F.3d 1307, 1316 (Fed. Cir. 2016).

This Court has repeatedly held that the presence of generic hardware and software like the kind recited in the claims of the '067 Patent does not make an otherwise abstract idea patent-eligible. *See, e.g.*, *buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive."); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) ("At most, [the] claims attempt to limit the abstract idea of recognizing and storing information from hard copy documents using a scanner and a computer to a particular technological environment. Such a limitation has been held insufficient to save a claim in this context.").

Each of the steps recited in the claims is described only at a high level of generality. For example, representative Claim 1 of the '067 Patent recites "receiving . . . training data . . . representing training taken by the user at hand held device"; "receiving identifying information for the user"; "identifying the user of the hand held device"; "authenticating the identity of the user of the hand held device by requesting authentication data from the user and comparing the authentication data with a master user identification

template"; "recording the training data"; "locating at least one training file contained within the training data"; "determining status of the training file by comparing the training file with an associated master training template"; and "recording training status."

To accomplish these high level functions, the patent recites the need for only off-the-shelf, conventional computer technologies. For example, the specification explains that the claimed handheld device can be any of "[t]he most advanced data- and video-enabled wireless communication devices [that were] available in the marketplace [that] take the form of a PDA (e.g., Palm Pilot™, Handspring Visor™, and Windows CE compatible hand held computers, such as the iPAQ™)." Appx0050, '067 Patent at 3:48-52. As another example, the specification states that "hand held device[s] . . . [such as] Handspring™ PDA and associated cellular phone attachment module, . . . [or] Palm-Motorola phone, which permits users to access e-mail and store calendars and contact databases." Appx0053, '067 Patent at 10:11-18. The specification also explains that "PDA's and similar hand held devices can also be linked remotely to networks such as the Internet via local wireless resources, such as RF broadcasts or through available wireless communications techniques." Appx0050, '067 Patent at 3:44-47.

Regarding authentication, the patent explains that "[a] login procedure is generally provided for the user where the user is asked to enter a password, login handle, biometric sample, or any combination of verification/authentication data. GUI representations of login screens and password fields are well known in the art." Appx0056, '067 Patent at 16:50-54. And, "[a] user can utilize a web browser, such as Netscape Navigator™, Microsoft Internet Explorer™, or other web browsers and micro browsers known to those skilled in the art, to access training and associated information." Appx0056, '067 Patent at 16:7-11. Further, the claimed memory can be "SRAM (Static RAM) [which] is generally a form of semiconductor memory (RAM) based on a logic circuit known as a flip-flop, which retains information as long as there is enough power to run the device." Appx0052, '067 Patent at 8:25-28.

In other words, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer . . . technology." *Elec. Power Grp.*, 830 F.3d at 1355. No limitations in the claims of the asserted patent rise to the level of an inventive concept under step two of the *Alice* test. *See, e.g.*, *Yu v. Apple Inc.*, 1 F.4th 1040, 1045 (Fed. Cir. 2021), cert. denied, 142 S. Ct. 1113, 212 L. Ed. 2d 10 (2022) ("[T]he claimed hardware configuration itself is not an advance and does not itself

produce the asserted advance of enhancement . . . which . . . is an abstract idea. The claimed configuration does not add sufficient substance to the underlying abstract idea of enhancement—the generic hardware limitations of claim 1 merely serve as a conduit for the abstract idea.") (quotations omitted).

The remaining claims of the '067 Patent (Claims 2-18) include similar limitations regarding the abstract idea and lack the specificity necessary to claim patent-eligible subject matter. These claims also do not contain any inventive concept amounting to "significantly more" than the abstract idea. They do not cover any unconventional computer components or techniques. Accordingly, they suffer from the same flaws as representative Claim 1. All of '067 Patent's claims simply apply the abstract concept of remotely managing training, and this Court has been clear that the abstract idea itself cannot confer an inventive concept. *See BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

Riggs compares the present case with *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, where the court found patentable claims that were "directed to a problem unique to text-message telecommunication between a mobile device and a computer." Blue Br. at 21 (citing Case No. CV 14-732-RGA, 2015 WL 1744343, at *5 (D. Del. Apr. 15, 2015). But the claim at issue in

*Messaging Gateway* is markedly different from the asserted claims here. The *Messaging Gateway* court explained:

> [The claim at issue] specifies how an interaction between a mobile phone and a computer is manipulated in order to achieve a desired result which overrides conventional practice. Conventionally, phones could not send SMS text messages to computers. The claimed method manipulates that interaction by translating the message in a way that allows the computer to receive and understand the message.

*Id.* at *5. The court thus found that the claim "contains a sufficient inventive concept to render it patent-eligible [because i]t is firmly rooted in technology and is addressed to a specific problem arising in the realm of mobile device-to-Internet communication." *Id.* at *6.

That is not the case here. The '067 Patent does not address a specific problem arising in the realm of mobile communication, but uses existing wireless-capable handheld devices for "providing training anywhere, in the trainees home, car, or even restroom by utilizing 'training data transmitted to the training server through a data network.'" *See* Blue Br. at 22. This problem of managing training is not even rooted in technology. Instead, the claims merely use technology as a tool, not as technological solution to some specific technological problem.

Riggs also argues, "The District Court did not consider 'the elements of each claim both individually and as an ordered combination to determine

[that] the additional elements transform the nature of the claim into a patent-eligible application.'" Blue Br. at 8 (citing *BSG Tech*, 899 F.3d at 1289). Riggs has not, and cannot, demonstrate a combination or arrangement of the '067 Patent's claim elements that amount to a technological improvement. First, Riggs's contentions are unsupported by the patent's specification. Second, Riggs does not explain precisely which unconventional arrangement or combination of the claim elements leads to the purported improvement or how it does so.

This Court addressed a similar issue in *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, when the patentee argued that the combination of its elements resulted in an inventive concept. 850 F.3d 1332, 1342 (Fed. Cir. 2017). The Court held that "the claims do not recite particular features to yield" the advantages proffered by the purported combination. *Id.* "[T]he claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it. Our law demands more." *Id.* The same is true here.

Finally, Riggs argues that "[t]he claims do not try to pre-empt every use of electronic training, but rather recite a specific way to facilitate remote training access allowing training anywhere, anytime rendering the claims patent eligible." Blue Br. at 23. Riggs's argument evidences a

misunderstanding of the preemption concern "that undergirds [the] § 101 jurisprudence" and incorrectly suggests that lack of total preemption confers patent eligibility. *See Alice*, 134 S. Ct. at 2358. This Court has repeatedly held to the contrary. *See Symantec Corp.*, 838 F.3d at 1321 ("the absence of complete preemption does not demonstrate patent eligibility"); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) (same); *FairWarning IP, LLC v. Iatric Sys.*, 839 F.3d 1089, 1098 (Fed. Cir. 2016) (same). There is no separate preemption test for patent eligibility; rather, the preemptive effect of a claim may be considered as part of the *Alice* analysis as to whether the claims are directed to an abstract idea or contain an inventive concept.

That said, the claims of the asserted patent do raise preemption concerns in the context of the *Alice* analysis. The preemption concern requires a balancing of how much "future innovation is **foreclosed relative to the contribution of the inventor**." *Mayo*, 132 S. Ct. at 1303 (emphasis added). Here, the inventor's contribution is just "conduct training remotely"—he did not invent the idea of training or any particular technical solution to conduct the idea remotely. Rather, he claimed the use of generic, well-known technologies, specifically the application of handheld devices, to practice the idea of managing training. There is no specificity in the claims

to limit them to the inventor's purported invention—instead, they disproportionately preempt a field of endeavor without the patent adding much by way of the inventor's contribution. That disproportionality supports finding the claim ineligible.

### D. Nothing precluded the district court from assessing eligibility of the patent at the Rule 12(b)(6) stage.

Patent eligibility has been resolved on motions to dismiss in many cases. *See Berkheimer*, 881 F.3d at 1368; *see also, e.g.*, *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (affirming district court's grant of motion to dismiss because claims were ineligible under § 101); *Simio, LLC v. Flexsim Software Prods.*, 983 F.3d 1353, 1364 (Fed. Cir. 2020) (same); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1380 (Fed. Cir. 2016) (same); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (same); *Content Extraction*, 776 F.3d at 1345 (same). There is no reason the district court should have declined to address this issue on the pleadings.

This case is markedly different from *Berkheimer* and the line of cases where factual issues have been found to exist in *Alice* Step 2. In *Berkheimer*, this Court noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." 881 F.3d at 1369. The Court added that "[t]he improvements in the

specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities . . . so we must analyze the asserted claims and determine whether they capture these improvements." *Id.* After finding that some claims "contain limitations directed to the arguably unconventional inventive concept described in the specification," the Court held that there was a question of fact as to whether those claims perform "well-understood, routine, and conventional activities." *Id.* at 1370. Here, in contrast, there is no factual dispute whether the claims of the '067 Patent include an inventive concept.

As this Court has held, resolution of patent eligibility at the Rule 12(b)(6) stage is appropriate when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125. That is the case here. The specification demonstrates that the claims do no more than implement preexisting functionality using generic computer components. "In a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute." *Aatrix*, 890 F.3d at 1356 (denying rehearing en banc). Encumbered by its own specification, Riggs could make no plausible

factual allegations that precluded resolution of eligibility at the Rule 12(b)(6) stage.

Riggs's only argument is that "the District Court erred [by finding] training administered via a wireless, handheld device [was conventional]." Blue Br. at 20. Riggs explained its argument by contending "[t]he patent specification provides that [allowing training anywhere was] not possible prior to the claimed invention" and "[t]hus, the claimed improvements cannot be said to be conventional when viewing the claim as a whole." *Id.* But the alleged invention uses well-known, widely-available devices (*i.e.*, a server and handheld devices) to perform their conventional functions (*i.e.*, receiving, processing, and storing data). Riggs does not contend that any of these devices were unconventional, or that the alleged invention uses any of them in an unconventional way.

Nor could it. The specification makes this clear. For example, the specification explains that the claimed handheld device could be any of a number of available options in the marketplace. *See* Appx0053, '067 Patent at 10:11-18. These claims do not contain an inventive concept sufficient to confer eligibility. There is simply nothing "inventive" about using generic devices to perform conventional functions.

Riggs's allegations of what was an "inventive concept" or was "not well-understood, conventional, or routine" need not have been accepted as true because they are conclusory and therefore do not "prevent resolving the eligibility question as a matter of law." *Simio*, 983 F.3d at 1365 (quoting *Aatrix*, 882 F.3d at 1125). The district court was therefore correct to address the eligibility issue on the pleadings, and its decision should be affirmed.

## IV. Conclusion and Relief Sought

For these reasons, the Court should affirm the district court's decision that the claims of the '067 Patent are invalid under 35 U.S.C. § 101.

Dated: May 23, 2022

Respectfully submitted,

By: */s/ Ricardo J. Bonilla*

Ricardo J. Bonilla
Neil J. McNabnay
Rodeen Talebi
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
rbonilla@fr.com
mcnabnay@fr.com
talebi@fr.com

*Counsel for Defendant-Appellee*
Cengage Learning, Inc.

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This Brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this Brief contains 8800 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2. This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionately spaced typeface using Microsoft Office Word in Georgia font, size 14.

*/s/ Ricardo J. Bonilla*
Ricardo J. Bonilla
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
rbonilla@fr.com

*Counsel for Defendant-Appellee*
Cengage Learning, Inc.

## CERTIFICATE OF CONFIDENTIAL MATERIAL

The foregoing document contains no unique words (including numbers) marked confidential, and so does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

*/s/ Ricardo J. Bonilla*
Ricardo J. Bonilla
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
rbonilla@fr.com

*Counsel for Defendant-Appellee*
Cengage Learning, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2022, I caused the foregoing brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system, which caused a copy of the foregoing to be delivered by electronic means to counsel of record.

*/s/ Ricardo J. Bonilla*
Ricardo J. Bonilla
Fish & Richardson P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070
rbonilla@fr.com

*Counsel for Defendant-Appellee*
Cengage Learning, Inc.