NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RIGGS TECHNOLOGY HOLDINGS, LLC,**
*Plaintiff-Appellant*

**v.**

**CENGAGE LEARNING, INC.,**
*Defendant-Appellee*

---

2022-1468

---

Appeal from the United States District Court for the District of Massachusetts in No. 1:21-cv-10778-LTS, Judge Leo T. Sorokin.

---

Decided: January 17, 2023

---

WILLIAM PETERSON RAMEY, III, Ramey LLP, Houston, TX, for plaintiff-appellant.

RICARDO BONILLA, Fish & Richardson P.C., Dallas, TX, for defendant-appellee. Also represented by NEIL J. MCNABNAY, RODEEN TALEBI.

---

Before TARANTO, CHEN, and STOLL, *Circuit Judges*.

CHEN, *Circuit Judge*.

Riggs Technology Holdings, LLC (Riggs) appeals from a decision by the United States District Court for the District of Massachusetts holding that the claims of U.S. Patent No. 7,299,067 ('067 patent) are directed to patent-ineligible subject matter under 35 U.S.C. § 101. We *affirm*.

## BACKGROUND

### I

The '067 patent is titled "Methods and Systems for Managing the Provision of Training Provided Remotely Through Electronic Data Networks to Users of Remote Electronic Devices." Claim 1 is representative[1] and recites:

> 1. A method of managing training completed remotely at a hand held device, said method comprising the step[s] of:
>
> > receiving at a training server training data transmitted to the training server through a data network from a user of a hand held device, the training data representing training taken by the user at hand held device;
> >
> > receiving identifying information for the user of a hand held device concurrently with the training data file;

[1] The parties agree on appeal, as they did before the district court, that claim 1 is representative for eligibility purposes. Appellant's Br. 4; Appellee's Br. 12; *see also Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*, 581 F. Supp. 3d 357, 360 (D. Mass. 2022). We therefore treat claim 1 as representative for our analysis. *See Yu v. Apple Inc.*, 1 F.4th 1040, 1042 n.1 (Fed. Cir. 2021).

> identifying the user of the hand held device;
>
> authenticating the identify [sic] of the user of the hand held device by requesting authentication data from the user and comparing the authentication data with a master user identification template containing authentication data associated with the user and accessible by the training server to determine if said comparison authenticates the user's identify [sic] as an authorized trainee;
>
> recording the training data in memory associated with the training server;
>
> locating at least one training file contained within the training data;
>
> determining status of the training file by comparing the training file with an associated master training template accessible from memory by the training server, the status including a determination if training represented by the training file meets a set criterion including at least one of: pending, incomplete, failed, passed; and
>
> recording training status in memory.

'067 patent col. 29 ll. 2–28. In short, representative claim 1 is directed to a method of managing training completed remotely at a handheld device comprising the steps of (1) receiving data related to a user and training taken by the user, (2) identifying and authenticating the user, and (3) determining and recording the user's training status.

## II

Riggs sued Cengage Learning, Inc. (Cengage) in the District of Massachusetts, alleging infringement of "one or

more claims" of the '067 patent. *Riggs Tech. Holdings, LLC v. Cengage Learning, Inc.*, 581 F. Supp. 3d 357, 358–59 (D. Mass. 2022). Cengage moved to dismiss the complaint on the basis that the '067 patent's claims are directed to ineligible subject matter under 35 U.S.C. § 101, *id.* at 359, and the district court granted Cengage's motion, *id.* at 363. In doing so, the court concluded that the '067 patent "is plainly drawn to an abstract idea," explaining that "the concept underlying the claims of the '067 patent—providing, managing, and/or documenting training completed remotely on a handheld device—is akin to those found in claims the Federal Circuit has deemed abstract and ineligible." *Id.* at 361 (citations omitted). The court also determined that the claims contain no inventive concept "because the claimed components and features (e.g., 'training data,' 'server,' 'data network,' 'identifying information,' 'hand held device,' and 'authentication data')—none of which Riggs claims to have invented—are all generically defined and conventional." *Id.* at 362 (citations omitted).

Riggs timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of a Rule 12(b)(6) motion under the law of the regional circuit. *Yu v. Apple Inc.*, 1 F.4th 1040, 1042 (Fed. Cir. 2021) (citation omitted). Under First Circuit law, we review such dismissals de novo, accepting as true all well-pled facts alleged in the complaint and drawing all reasonable inferences in the plaintiff's favor. *In re Loestrin 24 Fe Antitrust Litig.*, 814 F.3d 538, 549 (1st Cir. 2016) (citations omitted). Patent eligibility under 35 U.S.C. § 101 is ultimately an issue of law that we review de novo. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement

thereof, may obtain a patent therefor, subject to the conditions and requirements of" Title 35 of the United States Code. The Supreme Court has long held that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable" under § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)).

In *Alice*, 573 U.S. at 218, and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 77–78 (2012), the Supreme Court set forth a two-step test for determining whether claimed subject matter falls within one of the judicial exceptions to patent eligibility. First, we "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice*, 573 U.S. at 218. Second, if the claims are directed to a patent-ineligible concept, we "examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Id.* at 221 (internal quotation marks omitted) (quoting *Mayo*, 566 U.S. at 72, 80).

## I. *Alice/Mayo* Step One

We conclude that representative claim 1 is directed to the patent-ineligible abstract mental process of managing training that was provided remotely. The claimed steps accomplish nothing more than receiving information that a user completed a training and updating a record of that user's training. These steps "involve making determinations and identifications, which are mental tasks humans routinely do." *In re Killian*, 45 F.4th 1373, 1379 (Fed. Cir. 2022) (internal quotation marks and citation omitted). As we have explained, "where the focus of the claimed advance over the prior art shows that the claim's character as a whole is directed to steps that can be performed in the human mind, or by a human using a pen and paper[,] the

claim is for a patent-ineligible abstract idea." *Id.* (internal quotation marks and citations omitted).

That claim 1 performs the recited steps "on a generic computer does not save [it] from being directed to an abstract idea." *Id.* at 1379–80. Our cases "have distinguished between claims directed to an improvement in the functioning of a computer, versus those . . . that simply recite generalized steps to be performed on a computer using conventional computer activity." *Id.* at 1380 (internal quotation marks and citations omitted). Claim 1 is not directed to improving the functioning of the recited handheld device or server, and contrary to Riggs's assertion, it does not address a problem "necessarily rooted in computer technology in order to solve a specific problem in the realm of computer networks." Appellant's Br. 18. Instead, claim 1 uses "conventional or generic technology in a nascent but well-known environment" to implement the abstract idea of managing training completed remotely. *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016). The recited technology, like handheld devices and servers, are used as a "conduit for the abstract idea," not to provide a technological solution to a specific technological problem. *Id.*; *see also id.* at 611–13 (holding claims reciting the use of a cellular telephone and a network server to classify an image and store the image based on its classification to be abstract because the patent did "not describe a new telephone, a new server, or a new physical combination of the two" and did not address "how to combine a camera with a cellular telephone, how to transmit images via a cellular network, or even how to append classification information to that data").

As we explained in *Killian*, we have found "similar claims pertaining to data gathering, analysis, and notification on generic computers to be directed to abstract ideas at *Alice/Mayo* step one." 45 F.4th at 1380. In *Killian*, we held claims reciting a "search algorithm for identifying people who may be eligible for [Social Security Disability

Insurance] benefits that they are not receiving" were "directed to [a] patent-ineligible abstract mental process." *Id.* at 1379. We explained that the "claims must fail *Alice/Mayo* step one as they are directed to collection of information, comprehending the meaning of that collected information, and indication of the results, all on a generic computer network operating in its normal, expected manner." *Id.* at 1380.

Here, representative claim 1 is directed to collecting and storing information using a generic computer network operating in its normal, expected manner. Thus, like the claims in *Killian*, claim 1 must fail *Alice/Mayo* step one. *See also, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351, 1353–54 (Fed. Cir. 2016) (holding claims directed to collecting electric power grid data, analyzing the data, and displaying the results were directed to an abstract idea because "we have recognized that merely presenting the results of [the] abstract processes of collecting and analyzing information, without more . . . , is abstract"); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1345, 1347 (Fed. Cir. 2014) (holding claims directed to extracting data from hard copy documents using a scanner were directed to an abstract idea because the "concept of data collection, recognition, and storage is undisputedly well-known" and "humans have always performed these functions").

## II. *Alice/Mayo* Step Two

We also hold that the '067 patent's claims lack an inventive concept. A claim fails *Alice/Mayo* step two by "[s]tating an abstract idea while adding the words 'apply it with a computer.'" *Alice*, 573 U.S. at 223. In *Killian*, for example, we found the claims lacked an inventive concept where "[t]he additional steps in representative claim 1 do no more than instruct the practitioner to perform the abstract steps of gathering information, determining if a person is receiving benefits or is eligible for benefits under the

law, and displaying the results of that analysis, all on a generic computer." 45 F.4th at 1380. The same is true here. Representative claim 1 recites the abstract steps of gathering and storing information using a generic handheld device and server, and thus it lacks an inventive concept. Indeed, the '067 patent's only purported advance is managing training that is completed remotely on a wireless, handheld device (e.g., a cellular telephone). *See* Appellant's Br. 23–24; *see also* '067 patent at col. 4 ll. 4–25. The Supreme Court has explained, however, that "limiting the use of an abstract idea to a particular technological environment" is not enough for patent eligibility. *Alice*, 573 U.S. at 223 (internal quotation marks and citation omitted); *see also, e.g.*, *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258–59 (Fed. Cir. 2016) (holding claims that limited the wireless delivery of regional broadcast content only to cellphones "does not alter the result" that the "concept of providing out-of-region access to regional broadcast content is an abstract idea").

The '067 patent's specification reinforces the fact that the claim 1 implements its abstract idea through "well-understood, routine, conventional components." *Yu*, 1 F.4th at 1045. For example, the claimed handheld device "can be implemented" using "wireless, data-enabled hand held computing devices well known in the art." '067 patent at col. 9 ll. 18–23; *see also id.* at col. 3 ll. 25–58, col. 9 ll. 13–18, col. 9 l. 58 – col. 10 l. 18. Additionally, "[t]hose skilled in the art can appreciate that a variety of possible wireless communications and networking configurations can be utilized to implement a wireless network." *Id.* at col. 12 ll. 19–21; *see also id.* at col. 3 ll. 38–47, col. 9 ll. 53–58, col. 12 ll. 5–7, col. 12 ll. 22–28. And "[a]uthentication of training can be by username and password procedures known in the art." *Id.* at col. 20 ll. 26–27; *see also id.* at col. 16 ll. 50–59. Finally, the specification provides no detail suggesting that the claimed "training server" is unconventional or operates in an unconventional manner.

In sum, nothing in the '067 patent suggests that the patentee intended to accomplish any of the steps recited in representative claim 1 through anything other than well-understood technology used in a routine and conventional manner. Thus, representative claim 1 lacks an inventive concept. *See also, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1355 (holding claims lacked inventive concept where "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information"); *Content Extraction*, 776 F.3d at 1348 (holding claims lacked an inventive concept where the claims recited the use of "existing scanning and processing technology").

### III. Rule 12(b)(6)

Finally, we are not persuaded by Riggs's argument that factual issues—i.e., whether the claims of the '067 patent refer to conventional technology or not—preclude dismissing the suit at this preliminary stage. Appellant's Br. 24. We have held that patent eligibility can be determined at the Rule 12(b)(6) stage "when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (citations omitted). We also have explained that "where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018) (Moore, J., concurring in the denial of the petition for rehearing en banc) (citation omitted). This is the case here. As explained above, the '067 patent's specification admits that the claim elements are well-understood, routine, and conventional, and thus the district court did not err in dismissing Riggs's complaint.

## CONCLUSION

We have considered Riggs's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.

**AFFIRMED**